IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN A. DELL,<br><br>        Plaintiff,<br><br>   vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant.<br>_____/ | CASE NO. CV F 05-0320 LJO<br><br>**DECISION ON SOCIAL SECURITY COMPLAINT**<br>(Docs. 13, 17, 18.) |

**INTRODUCTION**

Plaintiff John A. Dell ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is neither disabled nor entitled to disability insurance benefits and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1382c. Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate Judge, and by an August 4, 2005 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff disability insurance benefits and SSI or to remand for further proceedings.

# BACKGROUND

## Personal Background

Plaintiff is age 49 and has a general equivalency diploma ("GED") and past employment as a truck driver, electrician, construction worker and moving company helper. (AR 15, 84, 89, 92, 179-180.) Plaintiff completed truck driver training in March 1992. (AR 89.)

## Administrative Proceedings

On February 11, 2003, plaintiff filed his disability insurance benefits and SSI applications to claim disability since September 5, 2002 based on left ankle surgery and left foot, ankle and leg pain. (AR 15, 61, 83, 155.) With its March 21, 2003 Notice of Disapproved Claims, the Social Security Administration ("SSA") denied plaintiff's claim and determined that plaintiff's condition is not severe enough to prevent him to work. (AR 47.) On April 28, 2003, plaintiff filed his Request for Reconsideration to note that he continued to experience a left ankle problem. (AR 52.) With its May 23, 2002 Notice of Reconsideration, SSA again denied plaintiff's claim and determined that plaintiff's condition is not severe enough to prevent him to work. (AR 53.)

On April 20, 2003, plaintiff filed his Request for Hearing by Administrative Law Judge to claim his left ankle continues to worsen. (AR 57.) A March 23, 2004 ALJ hearing was continued at plaintiff's request to allow him to obtain counsel. (AR 14, 170.) On April 12, 2004, counsel was appointed for plaintiff. (AR 29.) After a July 29, 2004 hearing, the ALJ issued his October 15, 2004 decision to conclude that plaintiff has the residual functional capacity to perform medium work, is able to return to his past relevant work as a truck driver, and is not disabled. (AR 22-25.)

Plaintiff submitted to SSA's Appeals Council his December 1, 2004 Request for Review of Hearing Decision/Order to claim that plaintiff "cannot perform substantial gainful work." (AR 9.) On January 4, 2005, the Appeals Council denied plaintiff's request to render the ALJ's October 15, 2004 decision as the Commissioner's final decision subject to this Court's review. (AR 5.)

///
///
///
///

**Medical History And Records Review**[1]

*Tomas B. Rios, M.D., Consultative Internist*

Internist Tomas Rios, M.D. ("Dr. Rios"), conducted a March 4, 2003 comprehensive internal medicine examination of plaintiff. (AR 110.) Plaintiff's chief complaint was injury to both legs. (AR 110.) Plaintiff noted that he had sustained a twisting left ankle injury in 1996 to require open reduction internal fixation with orthopedic hardware placement. (AR 110.) Plaintiff noted persistent left ankle pain. (AR 110.) Plaintiff further reported a 1991 right ankle hairline fracture suffered when he was hit on his left ankle by a crane. (AR 110.) Plaintiff's right ankle was placed in a leg cast. (AR 110.) Plaintiff noted that he attempts to help with household chores but does not drive. (AR 110.)

Dr. Rios' physical examination revealed that plaintiff was no in acute distress, walked with a "slight" left limp but had negative Romberg's test (a neurological test which is positive if a person is unable to stand with his feet together and close his/her eyes). (AR 111.) Dr. Rios found plaintiff's left ankle range of motion preserved and tenderness on palpatory examination, especially on the right ankle's lateral aspect. (AR 112.) According to Dr. Rios, the right ankle showed good flexion/extension mobility with adequate strength and some crepitation. (AR 112.) Dr. Rios noted that plaintiff showed motor strength of 5/5 to all extremities and bilaterally strong and adequate grip strength. Dr. Rios assessed "good mobility" and that plaintiff "will have difficulty with frequent squatting and climbing activities. His ability to walk and carry will be restricted to no more than six hours in an eight hour work period of time and he will require rest interval at least every hour for five minutes." (AR 112.)

*Physical Residual Functional Capacity Assessment*

Brian Ginsburg, M.D. ("Dr. Ginsburg"), a California Disability Determination Services ("DDS") physician, completed a March 19, 2003 Physical Residual Functional Capacity Assessment to conclude that plaintiff is able to: (1) lift/carry up to 50 pounds occasionally and 25 pounds frequently; (2) stand/walk about six hours in an eight-hour workday with five-minute breaks each hour; (4) sit about six hours in an eight-hour workday; (5) push/pull subject to the lift/carry limitations; (6) occasionally climb and crouch; and (7) frequently balance, stoop, kneel and crawl. (AR 124-125.) Dr. Ginsburg

---

[1] Although plaintiff claims that he is chiefly limited by his ankle condition, an SSA March 12, 2003 Report of Contact notes that plaintiff claimed no treatment for his ankle condition since 1995.

noted neither manipulative, visual, communicative nor environmental limitations. (AR 126-127.) On May 22, 2003, DDS physician Sadda Reddy, M.D. ("Dr. Reddy"), affirmed Dr. Ginsburg's assessment. (AR 130.)

### *Porterville Health Care Center*

Plaintiff treated at Porterville Health Care Center with Chi Nguyen, M.D. ("Dr. Nguyen"). On April 2, 2003, plaintiff complained of pain to both ankles and a left foot growth. (AR 118, 149.) Plaintiff explained to Dr. Nguyen that plaintiff fractured his right ankle in 1991 when hit by a train and injured his left ankle in 1995 when he stepped into a hole. (AR 149.) Dr. Nguyen observed: "He takes no pain medication at this time. He brings in a disability form to be filled out. I think this is the main reason for his visit today." (AR 149.) Dr. Nguyen found mild tenderness to both of plaintiff's ankles and assessed ankle pain. (AR 118, 149.) Dr. Nguyen gave plaintiff Motrin 600 mg and recommended plaintiff to return as needed. (AR 149.) On April 17, 2003, plaintiff complained of ankle pain aggravated by walking or standing more than an hour. (AR 148.) Examination revealed tenderness to plaintiff's left ankle with no erythema or swelling and full range of motion and equal strength bilaterally. (AR 148.) Plaintiff was assessed with left ankle pain and was prescribed Tylenol #3 and Ibuprofen 600 mg. (AR 117, 148.) April 21, 2003 left ankle x-rays revealed persistent ununited tiny fracture fragments of doubtful significance and no new apparent fracture. (AR 115.) On May 1, 2003, plaintiff complained of left ankle pain aggravated by standing more than 4-5 hours or walking two or three blocks. (AR 147.) Plaintiff noted moderate results with Ibuprofen and Tylenol #3. (AR 147.) Plaintiff exhibited left ankle tenderness on palpation and ability to get on the examining table without assistance. (AR 147.) Plaintiff was assessed with left ankle pain and continued on Ibuprofen 600 mg and Tylenol #3. (AR 114, 147.) On May 27, 2003, plaintiff complained of increasing pain over the past few months. (AR 146.) Plaintiff was continued on Ibuprofen, prescribed Vicodin for severe pain and directed to return as needed. (AR 145, 146.)

Dr. Nguyen completed a July 9, 2003 Medical Source Statement to assess that plaintiff is able to: (1) lift 10 pounds occasionally and less than 10 pounds frequently; (2) stand/walk less than two hours in an eight-hour workday; (3) sit six hours of an eight-hour workday; (4) occasionally balance, stoop, kneel and crawl; and (5) reach, handle, finger and feel without restriction. (AR 137-138.) Dr. Nguyen

precluded plaintiff from climbing and crouching and assessed plaintiff is able to walk 50 yards. (AR 136, 138.) Dr. Nguyen rated plaintiff's prognosis as fair. (AR 136, 138.)

On August 19, 2003, plaintiff presented with hypertension and left ankle pain complaints. (AR 144.) Plaintiff appeared in no acute distress and exhibited "slightly limited motion" in his left ankle and normal gait. (AR 144.) Plaintiff was prescribed Lotensin 10 mg and educated on a low salt diet and exercise. (AR 144.) On September 19, 2003, plaintiff presented with epigastric pain aggravated by spicy food, right shoulder pain, hypertension and chronic left ankle pain. (AR 142.) Plaintiff appeared in no acute distress and was assessed with gastroesophageal reflux disease, right upper back neuropathy, hypertension, controlled and left ankle pain. (AR 142.) Plaintiff was prescribed Paxil 20 mg, Pepcid 20 mg and Lotensin 10 mg and educated on a low-salt diet and exercise. (AR 143.)

On January 22, 2004, plaintiff complained of ankle pain traveling up his leg to his thigh and hip. (AR 141, 154.) Plaintiff was assessed with left ankle and leg pain and prescribed Ibuprofen 600 mg. (AR 154.) On February 4, 2004, plaintiff noted that he had not taken Lotensin for hypertension for a couple of months. (AR 153.) Dr. Nguyen assessed hypertension, advised plaintiff to lose weight and follow a low-salt diet, increased Lotensin to 20 mg, and prescribed Tylenol #3. (AR 139, 153.) On March 11, 2004, Dr. Nguyen noted that plaintiff had been scheduled for removal of left ankle orthopedic hardware but "failed to show up for surgery." (AR 152.) Dr. Nguyen noted that Dr. Lee told plaintiff that plaintiff does not need the hardware removed and "the pain is due to arthritis." (AR 152.) Dr. Nguyen found plaintiff's left ankle well healed with tenderness on passive range of motion and no swelling. (AR 152.) Dr. Nguyen noted plaintiff's normal gait, assessed hypertension, stable and well healed malleolar fracture, and continued plaintiff on Tylenol #3 and Lotensin 20 mg. (AR 152.) On April 13, 2004, Dr. Nguyen recommended plaintiff to lose weight. (AR 151.)

### J.R. Lee, M.D., Treating Orthopedist

Plaintiff treated with orthopedist J.R. Lee, M.D. ("Dr. Lee"), and on May 16, 2003, complained of left ankle pain and pain from walking and standing. (AR 133.) Dr. Lee observed plaintiff's normal gait, good, full ankle range of motion, and good ankle neurological function. (AR 133.) Dr. Lee assess that a bit of step on the ankle joint causes pain and post-traumatic arthritis. (AR 133.) Dr. Lee advised plaintiff "to leave it alone." (AR 133.) As for improvement, Dr. Lee suggested removal of the

orthopedic hardware and concluded that if removal does not help, the "pain is most likely from ankle arthritis." (AR 133.) On July 25, 2003, Dr. Lee admitted plaintiff for removal of left ankle hardware and noted that a plate and screw may cause his symptoms and bone osteoporosis. (AR 132.) Dr. Lee observed that plaintiff's upper and lower extremities were generally normal and that plaintiff's "[g]ait seems to be normal." (AR 132.) Dr. Lee diagnosed a well healed bimalleolar fracture. (AR 132.)

### *Medications*

Plaintiff's medications have included Ibuprofen, Motrin 600 mg, Tylenol #3, and Vicodin. (AR 107.)

### **Plaintiff's Activities And Testimony**

### *Reports And Questionnaires*

In his February 11, 2003 Disability Report Adult, plaintiff claimed his ability to work was limited by a plate and eight screws in his left ankle and "something growing from the top of my foot" in that his ankle swells, his leg hurts and his sleep is disturbed. (AR 83.) After plaintiff's alleged September 5, 2002 disability onset date, plaintiff stopped working because of foot and leg disturbance, swelling and aching. (AR 83.)

In his April 24, 2003 Reconsideration Disability Report, plaintiff claimed that his left foot and ankle worsened and swelled more with pain "becoming unbearable." (AR 101.) Plaintiff is unable to be on his feet for long periods or to stand for more than 30 minutes. (AR 101.) Plaintiff's condition "sometimes" keeps him awake at night and interferes with his ability to "get around." (AR 103.)

In an undated statement, plaintiff noted that doctors suggested to remove his left ankle plate and that he "cannot get around as much." (AR 105.) For his left ankle pain, plaintiff was treated with Tylenol with codeine and Ibuprofen. (AR 105.)

### *Plaintiff's ALJ Hearing Testimony*

Plaintiff testified at the July 29, 2004 ALJ hearing that he had been licensed as an electrician, not as a contractor. (AR 180.) Plaintiff's truck driving license has lapsed. (AR 181.) Plaintiff's driver's license was revoked for a ticket he could not pay. (AR 184.) Plaintiff does not drive and last drove in November 2001. (AR 200-201.) Plaintiff gets around by bus or walking. (AR 201.)

Plaintiff stopped his household moving job because his ankle gave him "trouble" and he was

1  "more or less the black sheep" in his family's moving business. (AR 182.) Plaintiff's electrician and
2  construction work required him to be on his feet. (AR 183.)

3  When asked why plaintiff is not working, plaintiff responded that "nobody wants to hire me."
4  (AR 185.) Plaintiff last tried to find general construction labor work about a year prior to the ALJ
5  hearing. (AR 186.) Plaintiff talked to the owner of a construction firm about doing finish work and
6  submitted an application but did not hear back. (AR 187-188.)

7  Plaintiff injured his left ankle in 1996 when he stepped into a hole. (AR 189.) Plaintiff
8  continued to work but his ankle worsened. (AR 190.) Plaintiff is able to walk three or four blocks
9  before needing to sit down for 15-20 minutes due to ankle and leg pain, more so on the left. (AR 188,
10 199.) Plaintiff estimated he is able to stand five minutes at a time and up to an hour and a half during
11 an eight-hour day. (AR 194.) Plaintiff prefers moving around to standing still and estimated he is able
12 to move around two hours during an eight-hour workday. (AR 195-196.) Plaintiff estimated he is able
13 to sit for a couple of hours before needing to move around and elevate his leg. (AR 194.) Plaintiff
14 elevates his leg three or four times a day for 10-15 minutes. (AR 195.) Plaintiff's left ankle swells with
15 a lot of walking and climbing stairs. (AR 196.) Plaintiff estimated he is able to lift 10-15 pounds. (AR
16 199.)

17 The left leg pain throbs to the bone or shoots up to his thigh and hip. (AR 193.) The pain
18 awakens plaintiff and keeps him up at night. (AR 194.) Plaintiff's right ankle throbs and aches like
19 arthritis. (AR 194.) Plaintiff takes Vicodin, Tylenol with codeine, Motrin and Ibuprofen. (AR 190.)
20 Motrin and Ibuprofen do not alleviate his pain, and Vicodin and Tylenol with codeine "help somewhat."
21 (AR 190.) Plaintiff initially noted he took prescribed medications since September 2002 but on ALJ
22 prompting corrected himself to note he took prescription medication since April or May 2003. (AR
23 191.) Plaintiff begs Dr. Nguyen for a Tylenol with codeine prescription. (AR 193.) Plaintiff sees Dr.
24 Nguyen every month or month and a half. (AR 193.) Plaintiff estimated he has three or four bad days
25 a month. (AR 203.) On bad days, plaintiff takes more pain pills, stays off his leg and elevates it. (AR
26 203.) Plaintiff seriously doubts he could work on a bad day. (AR 203.)

27 Plaintiff's orthopedist most recently recommended not to remove his left ankle orthopedic
28 hardware because arthritis has set in. (AR 197.) Plaintiff gained 40 pounds since March 2004. (AR

7

203.)

Plaintiff lives with his wife, and they live in a home with an elderly couple. (AR 199.) Plaintiff reads "a lot." (AR 199.) Plaintiff and his wife collect cans for recycling money. (AR 188.) Plaintiff performs household chores, including installation of cooler pads, lawn mowing, and fixing something which is broke or a stuck window. (AR 200.)

## The ALJ's Findings

In his October 15, 2004 decision, the ALJ identified the specific issue as whether plaintiff is under a disability, defined as inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. (AR 14.) In concluding that plaintiff is not disabled and retains capacity to adjust to work that exists in significant numbers in the national economy (AR 23), the ALJ found:

1. Plaintiff's well healed bimalleolar left ankle fracture is a severe impairment but neither meets nor medically equals an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

2. Plaintiff's allegations regarding his limitations are not totally credible.

3. Plaintiff has the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently, to stand/walk about six hours in an eight-hour work day with rest breaks every hour for five minutes, to sit for about six hours in an eight-hour work day, and to climb and crouch occasionally.

4. Plaintiff's past relevant truck driver work does not require work-related activities precluded by plaintiff's limitations.

5. Plaintiff's medically determinable impairment does not prevent him to perform his past relevant truck driver work.

6. Plaintiff has the residual functional capacity to perform substantially all of the full range of medium work.

7. Plaintiff is not disabled based on an exertional capacity for medium work and plaintiff's age, education and work experience, and using section 203.29 of the Medical-Vocational

Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 ("Medical-Vocational Guidelines").

8. Plaintiff's capacity for medium work is substantially in tact and has not been compromised by non-exertional limitations. (AR 24.)

## DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[2] Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

---

[2] "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff bears the burden to prove that he is disabled which requires presentation of "complete and detailed objective medical reports of his condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). Plaintiff must furnish medical and other evidence about plaintiff's medical impairments. 20 C.F.R. §§ 404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine whether you are disabled or blind. You are responsible for providing that evidence.")

Here, plaintiff claims disability since September 5, 2002 chiefly due to ankle problems. (AR 15, 61, 83, 155.)[3]

With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's October 15, 2004 decision.

### Dr. Nguyen's Opinion

Plaintiff contends that the ALJ erroneously failed to adopt the opinion of treating physician Dr. Nguyen and that Dr. Nguyen's limitations "are supported by the record and Dr. Rios' report." The Commissioner responds that the ALJ provided specific, legitimate reasons to conclude that Dr. Nguyen's residual functional capacity assessment "was overly restrictive."

A treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes*, 881 F.2d at 751.[4] An ALJ may reject a treating physician's opinion whether

---

[3] In his opening brief, plaintiff noted his obesity and argued that the ALJ failed to find obesity a severe impairment. In his reply papers, plaintiff recanted his obesity claim and agreed "that the ALJ did not err[] in his assessing claimant's obesity and its affect on the ankles." As such, this Court will not further address plaintiff's obesity.

[4] A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e). The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.

or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes,* 881 F.2d at 751. Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

The Ninth Circuit has further explained:

> To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must "'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." . . . The rule . . . does not apply, however, "when the nontreating physician relies on independent clinical findings that differ from the findings of the treating physician." . . . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence . . .'"

*Magallanes*, 881 F.2d at 751(citations omitted.)

An ALJ may reject a treating physician's report based on a claimant's exaggerated claims. *See, e.g., Sandgathe*, 108 F.3d at 980. A physician's opinion of disability "premised to a large extent upon claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citing *Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953 (1997) ("no physician has been able to find a link between [claimant's] complaints and known medical pathologies").

"[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

As a reminder, Dr. Nguyen assessed that plaintiff is able to: (1) lift 10 pounds occasionally and less than 10 pounds frequently; (2) stand/walk less than two hours in an eight-hour workday; (3) sit six hours of an eight-hour workday; (4) occasionally balance, stoop, kneel and crawl; and (5) reach, handle, finger and feel without restriction. (AR 137-138.) Dr. Nguyen precluded plaintiff from climbing and crouching and assessed plaintiff is able to walk 50 yards. (AR 136, 138.)

After thoroughly detailing the facts and medical evidence (AR 15-19), the ALJ properly

discounted Dr. Nguyen's assessment:

> I note the claimant's treating physician, Dr. Chi Nguyen, assessed the claimant's functional capacity as less than sedentary in July 2003 (Exhibit 5F, pp. 3-5). However, the objective medical evidence does not support these limitations. Dr. Nguyen's own treatment notes report that there was full range of motion of both ankles with no redness or swelling. Although there was a 1 cm nodule on the dorsum of the left foot, this did not require treatment (Exhibit 5F, p. 16). Claimant had a normal gait and he did not require any assistive device to walk. Furthermore, an orthopedic specialist later told claimant in March 2004 that he did not require surgery to remove the hardware (Exhibit 6F, p. 3). This assessment lacks the bases for his restrictions, other than left ankle pain, aggravated by "extreme" range of motion, or walking greater than half a block. Per claimant's testimony, he takes the bus and walks to get around town, which does not support this conclusion. As the radiographic evidence showed a well healed bimalleolar fracture, these limitations appear to be based on claimant's subjective complaints, and appear to be an accommodation in an attempt to assist the claimant in obtaining benefits rather than verifiable medical assessment. As such, this assessment is given lesser weight. (AR 21-22.)

As noted by the Commissioner, Dr. Rios controverted Dr. Nguyen's overly restricted residual functional capacity assessment. Dr. Rios assessed "good mobility" and that plaintiff's "ability to walk and carry will be restricted to no more than six hours in an eight hour work period." (AR 112.) Dr. Rios' consultative assessment constitutes substantial evidence based on his independent objective tests and clinical findings. "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Moreover, DDS physicians Dr. Ginsburg and Dr. Reddy concluded that plaintiff is able to perform medium work to provide substantial evidence to support the ALJ's evaluation. *See Morgan v. Commissioner of Social Security Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (opinion on nonexamining medical advisor may serve as substantial evidence when supported by other evidence in the record and consistent with it).

The ALJ correctly noted that Dr. Nguyen's treating notes contradict his residual functional capacity assessment. Dr. Nguyen consistently found no more than tenderness to plaintiff's ankle. (AR 118, 147-149, 152.) Dr. Nguyen noted full range of motion and absence of swelling. (AR 148, 152.) Dr. Nguyen treated plaintiff conservatively with medication. (AR 145-146, 149, 154.) Dr. Nguyen noted plaintiff's normal gait and recommended exercise. (AR 144, 152.) Dr. Nguyen found plaintiff's left

ankle well healed. (AR 152.) At times, Dr. Nguyen did not specify return appointments and directed plaintiff to return as needed. (AR 145, 146, 149.) Ankle x-rays were unremarkable. (AR 115.)

The ALJ properly noted the lack of severity of plaintiff's condition:

> The claimant does not have joint inflammation or deformity in two or more major joints. He does not have significant, documented constitutional symptoms and signs such as fatigue, malaise, or weight loss, and involvement of two or more body systems at a moderate level of severity. Dr. Nguyen noted there was no erythema or swelling, and claimant demonstrated full range of motion and equal strength bilaterally. (AR 20.)

The ALJ also correctly observed the absence of focal motor deficits, gait instability and assistive device to walk. (AR 21.) The ALJ further commented on plaintiff's "full range of motion of his lower extremities and bilateral ankles." (AR 21.)

As to conservative treatment, the ALJ explained:

> The claimant has been prescribed analgesic pain medication and nonsteroidal anti-inflammatory drugs, which he testified helped. In fact, it is noted that the claimant has received only minimal, conservative treatment for his complaints, consisting primarily of pharmocological and palliative remedies. Although one year ago he was scheduled for surgical removal of the hardware in his left ankle, claimant reported that Dr. Lee now advised against this procedure (Exhibit 6F, p. 3). (AR 20.)

The ALJ properly discredited plaintiff to discount Dr. Nguyen's assessment:

> . . . I particularly note that the claimant had not had any treatment for his ankle condition since 1995. He did not seek any medical treatment until after he filed his Social Security claim, and after his consultative examination of March 2003. At the time of the consultative examination, claimant stated he had persistent ankle pain, but he was not taking any medications (Exhibit 1F). In fact, Dr. Chi Nguyen noted that when claimant began treatment on April 2, 2003, he brought in a disability form to fill out, and that this was "the main reason" for his appointment (Exhibit 5F, p. 16). (AR 21.)

The evidence reflects that Dr. Nguyen accommodated plaintiff to render dubious Dr. Nguyen's assessment. Plaintiff does not challenge the ALJ's credibility assessment.

In short, the ALJ properly noted the absence of support for Dr. Nguyen's residual functional capacity assessment. The ALJ thoroughly summarized the medical record and conflicting evidence (AR 15-20) and provided his rational interpretation and findings. Plaintiff demonstrates no error in the ALJ's evaluation of Dr. Nguyen's assessment.

### Absence Of Vocational Expert

Plaintiff argues that the limitation of a five-minute rest each hour required vocational expert testimony as to available jobs for such limitation. The Commissioner responds that vocational expert

testimony was unnecessary in that a truck driving job involves long sitting periods and that plaintiff's rest restriction applied only if plaintiff stood for more than one hour.

Plaintiff bore the initial burden to establish disability "by showing that a physical or mental impairment prevents him from engaging in any of his previous occupations." *Sanchez v. Sec. of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987). A claimant is not disabled if he can perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(f); 416.920(f).

In the final step of the five-step disability evaluation, the Commissioner has the burden to show, in light of a claimant's residual functional capacity, he/she can engage in other substantial gainful work that exists in the national economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The Commissioner may meet this burden by testimony of a vocational expert or reference to the Medical-Vocational Guidelines. *Osenbrock*, 240 F.3d at 1162.

Plaintiff demonstrates neither the necessity of vocational expert testimony nor plaintiff's inability to perform his past relevant work as a truck driver. As noted by the Commissioner, DDS vocational experts determined that plaintiff was able to return to his truck driver work to bolster the ALJ's determination. (AR 38-39, 44.) The ALJ properly concluded that the "evidence indicates the claimant could return to this occupation as he described it, and as it is described in the DOT [Dictionary of Occupational Titles] at the semiskilled, medium exertional level." (AR 22.) Moreover, as noted by the Ninth Circuit Court of Appeals:

> [T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986); *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983); *Olde v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).
>
> The ALJ must weigh conflicting evidence concerning the claimant's past work experience, education, and present psychological and physical impairments. The ALJ then applies the grids to these factors, ensuring that the final determination will be both consistent with other similar cases and expeditious. The claimant may challenge the sufficiency of the evidence supporting the ALJ's assessment. A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.
>
> All this can be accommodated to a system of fair and expeditious disposition of claims by those asserting pain or other non-exertional limitations. It is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines.

*Desrosiers v. Secretary of Health and Human Servs.,* 846 F.2d 573, 576 (9th Cir. 1988) (citing decisions from the Second, Fourth, Fifth, Sixth and Eighth Circuit Courts of Appeals).

Plaintiff failed to demonstrate a significant non-exertional impairment or that non-exertional limitations significantly limit the range of work permitted by his exertional limitations. Plaintiff points to no error in the ALJ's use of the Medical-Vocational Guidelines or finding that non-exertional limitations did not compromise plaintiff's capacity for medium work .

## CONCLUSION AND ORDER

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded plaintiff is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff disability insurance benefits and SSI or to remand for further proceedings. This Court DIRECTS the Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff John A. Dell and to close this action.

IT IS SO ORDERED.

**Dated:   June 2, 2006**                   **/s/ Lawrence J. O'Neill**
66h44d                                           UNITED STATES MAGISTRATE JUDGE